Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Geovanny Ortiz Pérez<br><br>Recurrente<br><br>vs.<br><br>Departamento de Corrección y Rehabilitación<br><br>Recurrida | TA2025RA00183 | **REVISION ADMINISTRATIVA** procedente del Departamento de Corrección y Rehabilitación<br><br>Núm.:<br>1-88190<br><br>Sobre: |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de agosto de 2025.

Comparece por derecho propio el señor Geovanny Ortiz Pérez (Sr. Ortiz Pérez o recurrente), quien es miembro de la población correccional, y nos solicita la revisión de la Resolución emitida el 16 de mayo de 2025 por el Departamento de Corrección y Rehabilitación (Departamento de Corrección o agencia). Mediante el referido dictamen, la agencia ordenó que el recurrente fuese reubicado al nivel de custodia máxima.

Por su condición de confinado, aceptamos que el Sr. Ortiz Pérez litigue el presente recurso *in forma pauperis*.

Luego de evaluar el recurso presentado, así como la evidencia documental anejada al mismo, prescindimos de la comparecencia de la parte recurrida y procedemos a resolver. Véase, Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, a la pág. 15, 215 DPR __ (2025).

Examinada la totalidad del expediente a la luz del estado de derecho vigente, confirmamos el dictamen recurrido mediante los fundamentos que expondremos a continuación.

**I.**

Surge del expediente ante nos que, el Sr. Ortiz Pérez cumple una condena carcelaria de 152 años y seis (6) meses por la comisión de los delitos de asesinato en primer grado, conspiración, uso de disfraz y violación a la Ley de Armas de Puerto Rico.[1]

Con el fin de evaluar su plan institucional, el 16 de mayo de 2025, el Comité de Clasificación y Tratamiento (CTT) del Departamento de Corrección celebró una reunión, y alcanzó un acuerdo en cuanto al nivel de custodia del recurrente.

Conforme a lo anterior, ese día, la agencia recurrida, orientada por el criterio del CTT, dictó una Resolución[2], en la que determinó que el Sr. Ortiz Pérez debía ser reclasificado del nivel de custodia mínima a máxima. A esos efectos, emitió las siguientes determinaciones de hechos:

> *1. 15 de agosto de 1997 el Tribunal de Yabucoa emite un auto de prisión provisional por los delitos de [r]obo con una fianza de $10,000.00.*
>
> *2. El 5 de septiembre de 1997 el Tribunal Municipal de Caguas emite un auto de prisión provisional por los siguientes delitos:*
>
> *a. Art. 173 C.P[.]con una fianza de $100,000.00*
>
> *b. Art. 6 L.A[.] con una fianza de $100,000.00*
>
> *c. Art. 8 L.A[.] con una fianza de $100,000.00*
>
> *3. El 28 de octubre de 1997 el Tribunal de Humacao emite un auto de prisión provisional por los siguientes delitos:*
>
> *a. Art. 15 Ley 8 con una fianza de $20,000.00*
>
> *b. Art. 6 L.A[.] con una fianza de $10,000.00*
>
> *c. Art. 8 L.A[.] con una fianza de $15,000.00*

---

[1] No surge del expediente ante nuestra consideración, cuáles legislaciones aplicó el Tribunal de Primera Instancia en las sentencias impuestas contra el aquí recurrente.

[2] Notificada en igual fecha.

*d. Art. 401 L.S.C[.] (2 cargos) con una fianza de $20,000.00 en cada caso*

*4. El 5 de diciembre de 1997 el Tribunal de Humacao emite un auto de prisión provisional por los siguientes delitos:*

*a. Asesinato en 1er grado con una fianza de $200,000.00*

*b. Infr. Art. 6 L.A[.] (3 casos) una fianza $20,000.00 en cada caso*

*c. Infr. Art. 6-A con una fianza de $20,000.00*

*d. Infr. Art. 8 L.A[.] (3 casos) con una fianza de $30,000.00 en cada caso*

*e. Infr. Art. 262 C.P[.] con una fianza de $50,000.00*

*f. Art. 237 C.P[.] con una fianza de $20,000.00*

*g. Infr. Art. 18 Ley 8 con una fianza de $30,000.00*

*h. Infr. Art. 180 C.P[.] con una fianza de $30,000.00*

*5. El 3 de noviembre de 2000 el Tribunal Superior de Humacao emite la[s] siguiente[s] sentencia[s] contra Geovanny Ortiz Pérez:*

*a. Asesinato en 1er grado (1 caso) (HVI1998G0012) sentencia de 99 años.*

*b. Conspiración (1 caso) (HOP1998G0002) sentencia de 5 años.*

*c. Posesión de armas sin licencia (3 casos) (HLA1998G0040, HLA1998G0041, HLA1998G0044) sentencia de 2 años cada caso.*

*d. Posesión de varias armas de fuego (1 caso) (HLA1998G0042) sentencia de 10 años.*

*e. Portación sin licencia de armas de cargadas o sus municiones a la vez (3 casos) (HLA1998G0043, HLA1998G0045, HLA1998G0046) sentencia de 10 años cada caso.*

*f. Uso de disfraz (1 caso) (HF1998M0005) sentencia de 6 meses.*

*g. Penalidades por posesión, libertad a prueba y eliminación de r[é]cord por primer delito (1 caso) (HSC1996G0253) revocación de libertad a prueba y sentencia a 2 años de presidio.*

*6. El 12 de junio de 2004 el M.P.C[.] culmin[ó] su sentencia a nivel [f]ederal.*

*7. El 23 de febrero de 2011 ingresa al sistema correccional.*

*8. El 24 de marzo de 2011 se clasifica inicialmente al confinado en custodia máxima. Dicha custodia mantenida hasta septiembre de 2018.*

*9. El 11 de julio de 2012 se le realiza la toma de muestra de A.D.N[.] del confinado.*

*10. El 6 de septiembre de 2012 culmin[ó] la terapia de Trastornos Adictivos.*

*11. El 10 de diciembre de 2013 se le realiza prueba toxicológica la cual arroja resultado negativo.*

*12. El 1 de mayo de 2014 se realiza la prueba toxicológica la cual arroja resultado negativo.*

*13. El 16 de diciembre de 2014 culmin[ó] la Terapia de Control de Impulsos y Manejo de Coraje.*

*14. El 23 de julio de 2015 se [sic] en [C]omité de Clasificación y [T]ratamiento para referir clemencia ejecutiva del confinado a la Junta de Libertad Bajo Palabra.*

*15. El 28 de julio de 2016 culmin[ó] la terapia de Aprendiendo a Vivir Sin Violencia.*

*16. El 29 de marzo de 2017 complet[ó] su 4to año educativo.*

*17. El 27 de septiembre de 2018 se reclasifica de custodia máxima a custodia mediana. Dicha custodia fue mantenida hasta octubre de 2023.*

*18. El 18 de diciembre de 2018 culmin[ó] la terapia de Valores, [S]alud, y Recuperación.*

*19. El 30 de agosto de 2019 ingresa a la Institución Correccional Bayamón 501 procedente de Correccional Guayama.*

*20. El 18 de diciembre de 2020 el Programa de Pre-Reinserción emite una evaluación para el Programa [de] Pre-Reinserción indicando que no es favorable por las [siguientes] razones:*

*a. No cualifica conforme [a] lo establecido en la orden administrativo DCR-2018-07 del 21 de diciembre de 2018 Programa para la Pre-Reinserción a la Libre Comunidad, Inciso IV Normas [G]enerales Letra A-Criterios de Elegibilidad Núm. 11. Le restan más de cinco (5) años para cumplir el mínimo de la sentencia. Cumplirá el mínimo de la sentencia el 29 de junio de 2044. Además en lo dispuesto en la Letra B-Exclusiones Núm. 5 debe haber cumplido la pena impuesta en el delito de [la] Ley de Arma[s]. Dejará cumplida[s] las sentencias de [la] Ley de Armas el 15 de junio de 2030.*

*21. [E]l 19 de diciembre de 2022 se asigna a rendir labores en el área de cocina Bayamón 705. Renunci[ó] a dicho trabajo el 27 de enero de 2023.*
*22. El 13 de marzo de 2023 culmin[ó] el Taller de Dibujo y Pintura de la Fundación Felisa Rincón de Gautier, Inc.*

*23. El 11 de octubre de 2023 se reclasifica de custodia mediana a custodia mínima.*

*24. El 7 de diciembre de 2023 se asigna a rendir labores en Car Wash Hato Rey, dicho empleo lo mantiene hasta el presente.*

*25. El 14 de mayo de 2024 se le realiza una prueba toxicológica la cual arroja resultados negativos.*

*26. El 12 de diciembre de 2024 participa del proyecto Postales Navideñas.*

*27. El 26, de diciembre de 2024 el Comité de Clasificación y Tratamiento refiere al M.P.C[.] al Programa Pre-Reinserción.*

*28. El 18 de marzo de 2025 se le radica una querella al confinado por los actos prohibidos #220 Mentir o dar información Falsa y #224 Llamadas telefónicas no autorizadas. El 30 de abril de 2025 se ve la vista de dicha querella donde posteriormente sale incurso en ambos códigos previamente mencionados.*

*29. M.P.C[.] cuenta con el mínimo para el 6 de mayo de 2029 y el máximo tentativamente para el 25 de julio de 2130.*[3]

Así determinado, el Departamento de Corrección puntualizó que reubicó al Sr. Ortiz Pérez en el nivel de custodia máxima, de conformidad con el puntaje que obtuvo en la Escala de Reclasificación de Custodia:

*Al ser evaluado mediante la Escala de Reclasificación de Custodia, obtuvo una puntuación de once (11), correspondiente a una custodia de máximas restricciones. El 18 de marzo de 2025 se le radica una querella al M.P.C[.] por los códigos 220 (Mentir o dar información falsa) y 224 (Realizar llamadas telefónicas no autorizadas). El día 30 de abril de 2025, el M.P.C. result[ó] incurso en una querella administrativa número #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 por violaciones a los códigos 220 (Mentir o dar información falsa) y 224 (Realizar llamadas telefónicas no autorizadas). Como consecuencia, se le impuso una sanción de 40 días naturales de suspensión de privilegios, incluyendo comisaría (excepto artículos de higiene personal), recreación activa, visitas, actividades especiales y cualquier otro privilegio institucional.*[4]

---

[3] Apéndice del recurso de Revisión Judicial, anejo 2, págs. 1-2.
[4] Apéndice del recurso de Revisión Judicial, anejo 2, pág. 3.

Oportunamente, el 23 de mayo de 2025, el recurrente presentó una solicitud de reconsideración, en la cual sostuvo que la agencia recurrida abusó de su discreción al reasignarlo al nivel de máxima custodia. En esencia, adujo que esta incidió al no aplicar las modificaciones discrecionales a la luz del ajuste conductual que ha manifestado en su proceso de rehabilitación. Según su postura, debe ser reubicado en un nivel de custodia más bajo, pues no ha enfrentado procedimientos disciplinarios ante la agencia.

Luego de evaluar sus argumentos, el 30 de mayo de 2025, la agencia recurrida, emitió una determinación, notificada el 5 de julio de 2025, en la cual resolvió no acoger la reconsideración peticionada.

Inconforme, el 1 de agosto de 2025, el Sr. Ortiz Pérez recurrió ante nos mediante un escrito intitulado Certiorari: Revisión Judicial. En su recurso, presentó los siguientes señalamientos de error:

> *Erró El Comite de Clasificación y Tratamiento Alclasificarme de custodia mínima a máxima. La puntuación en la Escala de Reclasificación de custodia (caso sentenciado) -2 y el Nivel de Custodia por escala. en mínima, utiliza seccion 7. Pasando por alto (apéndise (K) para ponel al recurrente un Nivel de custodia ms alto (gravedad del delito).*

> *Erró El Comite de Clasificación y Tratamiento y la oficina de clasificación A Nivel Central al utilizar El inciso (B-2) enumerado (e) pag. 49 para un nivel de custodia mas alto por una Querella disciplinaria (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) por los Codigo (220 y 224) resultando encurso 30 de abril de 2025 y pasar por alto el inciso B-2 enumerada (i) dice presenta un patron de conducta negativa repetitiva ha incurrido en tres o mas informes de indisciplina en el Termino de (un 1) año o menos no cumple con el plan institucional Trazado a pesar haber sido debidamente orientado. el recurrente nunca en su confinamiento ha incurrido en escrito negatibo ni en querellas disciplinarias durante 21 años, es contradictorio, a querel aplical inciso (B-2) numerada (e) atenido Buenos ajustes institucionales. Vease Reglamento 9151 Anejo 2 y 3.*

> *Erró El Comite de Clasificación y Tratamiento y la oficina de clasificación A Nivel Central al no querel vel*

*la apelación ya que es la primera ves que el recurrente se le hace una querella al no aplicarle al recurrente el inciso (E) Modificaciones discrecionales. para un nivel de custodia mas bajo, teniendo los requisitos exigido Vease Anejo 1, pag. 9 que el recurrente se encontraba estudiando en Caribean University contavilidad Matriculado 1 de mayo de 2025 Vease anejo 2, documento Programacion de cursos. Por solo una 1 querella de segundo nivel II el cual no daría puntuación 11 seria menos en noquerel aplical inciso (e) de la planilla de escala de reclac]ificación de custodia. Vease Anejo 2 y 4 pag. 1-5.*

## II.

Como norma general, los tribunales revisores estamos llamados a conceder deferencia a las decisiones de las agencias, pues estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado. *Katirias's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). En virtud de este principio, las determinaciones administrativas están revestidas de presunción de legalidad y corrección. *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2020). Por lo que, solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa". *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Capó Cruz v. Jta. de Planificación et al, supra,* a la pág. 591.

Cónsono con lo anterior, los tribunales revisores no debemos intervenir en las determinaciones de hechos siempre y cuando surja del expediente administrativo evidencia sustancial que las respalde. *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800, 821-822 (2012). La evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. de Planificación et al., supra,* a la pág. 591; *Rebollo v. Yiyi Motors,* 161 DPR 69, 76-77 (2004). Así pues, si en la solicitud de revisión la parte afectada no

demuestra la existencia de otra prueba, entonces las determinaciones de hechos deben ser sostenidas por este tribunal revisor. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 398 (1999).

En cambio, respecto a las conclusiones de derecho, tenemos autoridad para revisarlas en todos sus aspectos de acuerdo con la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675. Es decir, estamos facultados para revisarlas completa y absolutamente. *IFCO Recyclint v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg.* P.R., 144 DPR 425, 436 (1997). Ello, pues, no podemos imprimir un sello de corrección a aquellas determinaciones o interpretaciones administrativas irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019).

Ahora bien, tal facultad no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. Planificación et al.,* a la pág. 591; *Rebollo v. Yiyi Motors, supra* a la pág. 77. Nuestra deferencia cede en limitadas circunstancias, a saber, cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o la interpretación de las leyes o reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. V*oilí Voilá Corp. et al. v. Mun. Guaynabo, supra* a las págs. 754-755; *Super Asphalt v. AFI y otro, supra,* a la pág. 819.

Por último, en lo atinente al recurso que nos ocupa, es necesario destacar que, los dictámenes de las autoridades correccionales merecen nuestra deferencia cuando la parte

afectada procura revisión judicial. *Cruz v. Administración*, 164 DPR 341, 357 (2005). La determinación de estos organismos administrativos goza de deferencia sustancial, aun cuando no sea la única razonable. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011). Por tal razón, no sustituiremos el criterio administrativo, salvo que esté presente arbitrariedad, capricho, o no esté fundamentado en evidencia sustancial, según establece la norma imperante:

> *Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla. Cruz v. Administración, supra, a las págs. 354-355.*

**B.**

La Constitución de Puerto Rico establece como política pública la reglamentación de las instituciones penales para propender de forma efectiva al tratamiento de la población correccional, así como a su rehabilitación moral y social. Art. VI, Sección 19, Const. ELA, LPRA Tomo I. En virtud de este imperativo constitucional, el Art. 4 del Plan de Reorganización del Departamento de Corrección, Ley Núm. 2-2011, según enmendado, 3 LPRA, Ap. XVIII, Art. 4 (Plan de Reorganización) instaura la creación del Departamento de Corrección y Rehabilitación:

> *Se crea el Departamento de Corrección y Rehabilitación como el organismo en la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país.*

A esos fines, el Art. 7(aa) de esta medida legislativa faculta al secretario de esta agencia a adoptar reglamentos, órdenes y manuales que procuren el funcionamiento efectivo de las instituciones correccionales. 3 LPRA, Ap. XVIII, Art. 7(aa). Al amparo de esta autoridad, el Departamento de Corrección, por conducto de su secretario, adoptó el Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 de 22 de enero de 2020 (Manual de Clasificación o el Reglamento 9151), cuyo objetivo es el siguiente:

> *El método de clasificación de confinados es el eje central de una administración eficiente y un sistema correccional eficaz. Por lo tanto, la clasificación de los confinados consiste en la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación.*
>
> *Además de satisfacer las necesidades del confinado, el proceso de clasificación coordina la custodia física de los confinados en los programas y recursos disponibles dentro del Sistema Correccional. De conformidad con lo anterior, se pueden presupuestar fondos de manera adecuada para llenar las necesidades específicas de la institución, del personal y de la población correccional una vez estén clasificados funcionalmente. Más aún, un proceso sistemático de clasificación contribuye a mantener la sociedad protegida de las personas que han violentado las reglas formales.*

En esa línea, el Comité de Clasificación y Tratamiento (CTT) tiene amplia discreción para examinar el progreso del miembro de población correccional en aras de determinar el nivel de custodia aplicable. *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489, 504 (2022). Este cuerpo administrativo es el ente responsable de evaluar las necesidades de seguridad y los programas de los confinados sentenciados. Sección 1, Reglamento Núm. 9151, *supra.* Por ello, si una decisión de clasificación de custodia es razonable y cumple con el procedimiento reglamentarios sin alterar los términos de la sentencia impuesta, debemos confirmarla.

*Lebrón Laureano v. Depto. Corrección, supra* a la pág. 504*; Cruz v. Administración, supra*, a la pág. 355.

Sobre los niveles de custodia asignado por el CTT, el Tribunal Supremo de Puerto Rico ha adoptado la siguiente normativa:

> *La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección. Cruz v. Administración, supra,* a la pág. 352.

En el proceso de asignación de custodia, el CTT ostenta el deber de clasificar a la población correccional a tenor con los siguientes niveles de confinamiento:

> *Niveles de Custodia*
>
> *Máxima: Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la institución. Se utilizarán esposas, cadenas y grilletes en todo momento mientras los confinados de custodia máxima se encuentren fuera el perímetro de seguridad (la verja o el muro). Estos confinados estarán en celdas y no en dormitorios. Esto no limita la participación del confinado en los programas y servicios. Contarán con un período mínimo de dos (2) horas diarias de recreación física al aire libre, según lo permitan las condiciones climáticas.*
>
> *Mediana: Confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. Se requiere de dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo*

*momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción.*

*Mínima: Confinados de la población general que son elegibles para habitar en viviendas de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión. Estos confinados son elegibles para los programas de trabajo y actividades en la comunidad compatibles con los requisitos normativos. Estos individuos pueden hacer viajes de rutina o de emergencia fuera de la institución sin escolta, cuando tengan un pase autorizado, y pueden ser escoltados sin implementos de restricción.* Sección 1, Reglamento 9151, *supra.*

Así pues, mientras más restrictivo es el nivel de seguridad, con mayor frecuencia la agencia realizará la evaluación para determinar si la conducta del recluso amerita una reducción de custodia. *López Borges v. Adm. Corrección*, 185 DPR 603, 609 (2012). Véase, también, *Cruz v. Administración, supra,* a la pág. 354.

En lo pertinente a este recurso, la Sección 7 del Manual de Clasificación (2020), *supra,* establece los criterios relativos al proceso de asignación de custodia.  En particular, el apartado II de esta sección reglamenta un procedimiento de clasificación de custodia estandarizado por formularios:

*II. Objetivo de la Reclasificación de Custodia*

*El Formulario de Reclasificación de Custodia, Escala de Reclasificación, (Apéndice K) se utiliza para actualizar y revisar la evaluación inicial de custodia del confinado. La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.*

*La revaluación de custodia se parece a la evaluación inicial de custodia pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.* Sección 7(II), Reglamento 9151, *supra.*

En específico, el Apéndice K(I) del Manual de Clasificación (2020), *supra,* provee la Escala de Reclasificación de Custodia.

Este instrumento evaluativo contiene una serie de renglones para identificar a aquel confinado que representa un grave riesgo para la seguridad y la operación ordenada de la institución correccional:

> *(1) la gravedad de cargos/sentencias actuales; (2) el historial de delitos previos; (3) el historial de fuga, o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias previas serias; (6) las sentencias anteriores por delitos graves como adulto (de los últimos cinco años); (7) la participación de programas/tratamiento, y (8) la edad actual. Sección II, Apéndice K(II), Reglamento 9151, supra. Véase, también, Lebrón Laureano v. Depto. Corrección, supra, a la pág. 501.*

Nótese que, los renglones del uno (1) al tres (3) facilitan identificar a aquel al confinado que representa un grave riesgo para la seguridad. Así pues, si el confinado obtiene una puntuación de siete (7) o más en estos primeros renglones, le corresponderá su ubicación en máxima custodia sin tomar en consideración las puntuaciones en otros renglones. En consonancia con lo anterior, el Manual de Clasificación, *supra*, proporciona un resumen para la interpretación adecuada de la referida escala numérica:

> *Sección III. Resumen de la Escala y Recomendaciones*
>
> *A. Nivel de Custodia indicado por la Escala: Use el Formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia) y haga un círculo alrededor del nivel de custodia designado por la siguiente escala:*
>
> *Mínima      =      5 puntos o menos*
>
> *Mediana     =      5 puntos o menos si el confinado tiene una orden de detención, de arresto, u orden de  detención por violar la libertad bajo palabra o probatoria.*
>
> *Mediana     =      6-10 puntos en los renglones 1-8*
>
> ***Máxima      =          7 puntos o más en los renglones 1-3***
>
> ***Máxima      =          11 puntos o más en los renglones 1-8.*** *Sección III, Apéndice K(II), Reglamento 9151, supra.* (Énfasis nuestro).

No obstante, la consideración de estos reglones no es el único factor que el CTT analiza al asignar una clasificación de custodia. En ciertas circunstancias le compete aplicar las modificaciones discrecionales para decretar un nivel de custodia más alto o bajo. Respecto a este mecanismo discrecional, es importante puntualizar que, este constituye un conjunto de factores específicos de clasificación que el personal técnico puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación. Sección 1, Reglamento 9151, *supra*. Véase, también, *Lebrón Laureano v. Depto. Corrección, supra*, a las págs. 501-502.

En esa dirección, las modificaciones discrecionales para conceder un nivel de custodia más bajo requieren que el CTT evalúe los siguientes elementos:

> *Toda modificación discrecional deberá estar basada en documentación escrita que evidencia ajustes adecuados y que se ha beneficiado de tratamientos requeridos*
>
> *Gravedad del delito: La puntuación no refleja la verdadera naturaleza del crimen. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de modificación.*
>
> *Que el historial delictivo y circunstancias en que cometió el delito no revelen peligrosidad o habitualidad.*
>
> ***Conducta excelente: El confinado ha demostrado un historial excelente de conducta institucional que justifica que se le coloque en un nivel de custodia más bajo.***
>
> ***Que su comportamiento observable evidencie que ha ganado sentido de responsabilidad, que ha habido crecimiento personal, que ha demostrado interés por programas de tratamientos y ha sacado provecho de estos y se ha trazado unas metas reales claramente definidas para reintegrarse a la comunidad como ciudadano útil.***
>
> ***Que el historial social y de la evaluación ponderada del caso, se desprenda que el confinado no representa una amenaza para la población correccional, empleados del sistema o para la comunidad.***

*Que luego de un análisis ponderado se perfile como un buen candidato para recibir tratamientos en programas de comunidad y participar en actividades en la misma.*

*Que por lo menos en un año previo a su consideración para cambio de custodia, el confinado no haya sido declarado incurso en una vista administrativa por la comisión de una ofensa Nivel I o Nivel II conformen se establecen estas en el Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Desvío y Comunitarios.*

*Que su historial social y delictivo no revele un riesgo de fuga, más allá del que representa todo confinado.*

*Que el confinado acepte y observe las normas institucionales.*

*Conducta anterior excelente: durante el encarcelamiento anterior dentro del DCR, el confinado ha sido asignado a niveles de custodia más bajo y ha demostrado un excelente historial de conducta.*

*Estabilidad emocional: Que su situación emocional sea razonablemente estable, de forma tal que no represente riesgo para él, ni para sus compañeros y la sociedad en general.* Sección III(E) del Apéndice K(I), Reglamento 9151*, supra.* (Énfasis nuestro).

De acoger alguno de estos factores, en beneficio del confinado, el CTT deberá proveer una explicación e incluirá los detalles correspondientes para sostener tal determinación. Íd.

Ahora bien, si el confinado está en desacuerdo con el nivel de custodia asignado, tiene el derecho a presentar un recurso de revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta (30) días una vez haya acogido el proceso de reconsideración. Sección 7(V) de la Enmienda al Manual para la Clasificación, Reglamento 9281 de 20 de mayo de 2021.

**III.**

En el caso presente, el Sr. Ortiz Pérez señala que incidió el Departamento de Corrección al ordenar su reubicación al nivel de custodia máxima. Argumenta que la agencia debió aplicar el mecanismo de modificaciones discrecionales a la luz del ajuste conductual que ha manifestado en la institución correccional. En

vista de ello, sostiene que debe ser reclasificado a un nivel de custodia más bajo.  No le asiste la razón.

Luego de examinar sosegadamente el recurso de epígrafe, determinamos que el Departamento de Corrección, orientado por el criterio del CTT, no erró al elevar el nivel de custodia del recurrente.  Adelantamos que, la reubicación del Sr. Ortiz Pérez al nivel custodia máxima responde a una serie de criterios debidamente ponderados y sustentados por evidencia sustancial.  Veamos.

Surge del expediente ante nos que, el 16 de mayo de 2025, el CTT celebró una reunión para examinar el plan institucional del recurrente.  A esos fines, efectuó una evaluación mediante la Escala de Reclasificación de Custodia que arrojó una puntuación de 11 correspondiente al nivel de custodia máxima.  A base de dicho resultado, la agencia correccional emitió el siguiente análisis recogido en la determinación impugnada:

> *[S]e determina que el M.P.C. debe permanecer bajo custodia de máximas restricciones, conforme a la puntuación obtenida, [y] al patrón de comportamiento institucional observado el cual evidencia deficiencias en la capacidad del confinado para adaptarse a las normas del entorno correccional, así como una actitud incompatible con los objetivos de la rehabilitación establecidos.[5]*

A la luz de tales circunstancias, colegimos que no existen las condiciones jurídicas para aplicar las modificaciones discrecionales, y en efecto, reclasificar al recurrente a un nivel de custodia más bajo.  Recordemos, pues que, el Apéndice K(I) de la Sección III(E) del Manual de Clasificación, *supra*, dispone que el CTT puede aplicar tales modificaciones, siempre y cuando el confinado demuestre una conducta que justifique su reubicación en un nivel de custodia más bajo.  Para adoptar tal proceder, la sección reglamentaria precitada exige que, este no haya sido

---

[5] Apéndice del recurso de Revisión Judicial, anejo 2, pág. 3.

declarado incurso de una querella disciplinaria previo al año de la consideración de su reclasificación.

Sin embargo, tras evaluar el historial de este caso, contemplamos que el Sr. Ortiz Pérez no exhibe un íntegro acatamiento a las normas institucionales. Destacamos que, celebrada una vista administrativa, el 30 de abril de 2025, el Departamento de Corrección declaró incurso a este de realizar unas llamadas telefónicas no autorizadas y brindar información falsa.[6] Así establecido, dicho organismo agencial determinó que tal actuación constituyó una violación a los Códigos 220 y 224 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional.[7] Ante este cuadro fáctico, precisamos que no median las circunstancias para aplicar las modificaciones discrecionales, según peticiona el recurrente. Su conducta denota que no ha cumplido cabalmente con el plan institucional trazado.

Por tales hechos, reiteramos que la agencia no incidió al reasignar al Sr. Ortiz Pérez al nivel de custodia máxima. Tal actuación administrativa está respaldada en evidencia sustancial obrante en el expediente, y es cónsona con el procedimiento reglamentario establecido en el Manual de Clasificación, *supra*. A su vez, esta determinación refleja una aplicación adecuada del conocimiento especializado de los miembros que componen el CTT, quienes tienen la preparación necesaria para atender las necesidades de la población correccional. Véase *Cruz v. Administración, supra*, a las págs. 354-355.

Así establecido, concluimos que el recurrente no aportó prueba para derrotar la presunción de legalidad que reviste al dictamen cuestionado, el cual merece nuestra deferencia. En virtud de este razonamiento, confirmamos la Resolución

---

[6] Apéndice del recurso de Revisión Judicial, anejo 5, págs. 1-4.
[7] Reglamento Núm. 9221 del 8 de octubre 2020.

impugnada, pues esta no denota una actuación arbitraria, irrazonable o ilegal por parte de la agencia.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte del dictamen, confirmamos la Resolución recurrida, emitida por el Departamento de Corrección.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones